LIPEZ, Circuit Judge, dissenting.
Although I acknowledge that this is a close case, I cannot agree with my colleagues that Barbara Fawcett's complaint should be dismissed as a matter of law for failure to state a claim. Fawcett insists that, at a minimum, she is entitled to seek *141 information about the rationales and factual basis for Citizens Bank's "Sustained Overdraft Fees." I agree. Accordingly, I respectfully dissent.
Fawcett wisely does not challenge the OCC's well-established view that, under 12 C.F.R. § 7.4001(a), the fee imposed when a checking account is first overdrawn is a service charge rather than interest at least where, as here, the overdraft fee does not exceed the returned check fee.[7] Rather, she challenges the bank's sustained fees, which are charged over the course of ten days if an account remains overdrawn. Those fees unquestionably relate to the accountholder's continuing "use" of the bank's money over time -- a service for which banks ordinarily charge interest. Fawcett thus argues that the OCC's treatment of initial overdraft fees does not support dismissal of her complaint challenging the sustained fees assessed against her.
Fawcett's reasoning draws support from both the OCC's and Citizens Bank's depiction of typical overdraft practices. The OCC has described a bank's payment of checks drawn on insufficient funds as largely a bookkeeping accommodation for its customers: "Where a customer creates debits on his or her account for amounts in excess of the funds available in that account, a bank may elect to honor the overdraft and then recover the overdraft amount as part of its posting of items and clearing of the depositor's account." OCC Interpretive Letter No. 1082, 2007 WL 5393636, at *2 (May 17, 2007). At oral argument before our court, Citizens Bank similarly explained that, in the ordinary case, banks providing overdraft coverage at their discretion are merely resequencing accountholder deposits and withdrawals that will soon balance out. The resequencing characterization becomes increasingly inapt, however, when an accountholder's deposits do not quickly cure the overdraft. That is, as the days pass without offsetting deposits, the overdraft coverage looks more and more like a short-term loan. Borrowers typically pay for loans in the form of interest; hence, Fawcett's theory that the sustained overdraft charges for delayed payment are in effect interest has traction.
My colleagues hold that Interpretive Letter 1082 conclusively forecloses characterizing Citizens Bank's Sustained Overdraft Fees as interest, pointing to the Letter's footnote 3 as proof that the OCC has deemed "the precise practice here ... lawful." Maj. Op. at II.A. In footnote 3, the OCC reports that the bank whose inquiry prompted the Letter imposes initial overdraft fees of $23 or $34, depending on the frequency of overdrafts, and "also may charge a Continuous Overdraft Charge of $5 per business day from the fourth through eleventh calendar day that an account is overdrawn." 2007 WL 5393636, at *1 n.3 (emphasis added). Nowhere else in the Letter, however, does the OCC make specific reference to the continuous charges, and the Letter contains no analysis of whether those fees constitute interest.
To understand the significance of the footnote, it is important to recognize what the OCC was specifically addressing in the Letter. The Letter responded to questions posed by an unnamed bank that had been sued by plaintiffs who claimed the bank "may not recover overdraft amounts and *142 fees owed on an account from public benefits payments deposited in that same account by a California depositor." Id. at *2. The bank asked whether it could "honor items for which there are insufficient funds in depositors' accounts," recover the overdraft amounts as part of its "routine maintenance of these accounts," and deduct "overdraft fees from depositors' accounts for doing so." Id. at *1. The bank also sought confirmation that its overdraft practices did not trigger OCC regulations involving the application of "state law to a national bank's deposit-taking activities." Id.
I cannot conclude that the OCC, in responding to these questions and making only a passing descriptive reference to the bank's continuous overdraft charges, decided sub silentio the important issue of whether such fees constitute interest. To reach that conclusion, we must disregard the OCC's own observations in 2001, when it revisited the definition of "interest" for purposes of 12 C.F.R. § 7.001(a).
At that time, the OCC recognized that "[a] bank that pays a check drawn against insufficient funds may be viewed as having extended credit to the accountholder." 66 Fed. Reg. 8178-02, 8180, 2001 WL 68132 (Jan. 30, 2001). In other words, even from the outset, a bank's payment of a "not sufficient funds" ("NSF") check reasonably could have been characterized as a loan to its accountholder, with the related fees properly classified as interest. The agency, however, adhered to its prior view that the initial overdraft transaction is not an extension of credit, and, accordingly, the fee imposed should not be treated categorically as interest under § 7001(a). Importantly, however, the OCC did not reject classifying some "portion of a charge imposed in connection with paying an overdraft" as interest. 66 Fed. Reg. 34784-01, 2001 WL 731640, at *34787 (July 2, 2001). In fact, the OCC declined to decide whether the portion of such a fee that exceeds the amount charged when the bank refuses payment may constitute interest, noting that resolving this question involves "complex and fact-specific concerns." Id.
Interpretive Letter 1082, which was issued six years later, simply does not resolve the issue. The OCC was not specifically asked to consider, and the Letter does not purport to address, whether any charges exceeding a returned check fee -- which would include the "sustained" fees at issue here -- constitute interest. To be sure, it is possible that the OCC's cursory reference to the continuous charges means that it saw no obvious or material distinction between the initial and subsequent fees. Silence, however, is not guidance, and we would thus need to infer a ruling on a debated issue from between the lines of the Letter. I do not see how we can defer to an interpretation that the OCC never clearly made on an issue that it previously described as complex and fact-specific.
Nor do I believe the other reasons articulated by the majority permit us to conclude that Fawcett has failed to plausibly plead that Citizens Bank's sustained overdraft fees may be interest charges. It is irrelevant that the "Sustained Overdraft Fees" are limited in number and duration -- specifically, three charges over ten days -- and therefore do not resemble classic interest charges. The Supreme Court has expressly rejected the notion that charges that "do not vary based on the payment owed or the time period of delay" cannot constitute interest. Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 745, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (internal quotation marks omitted). In addition, although the sustained fees may reflect payments for services related to monitoring and maintaining the overdrawn account, see Maj. Op. at II.B, the majority's speculation *143 about such services does not justify discrediting the alternative possibility that the fees are instead designed to deter late payment and, as "late fees," constitute interest. See 12 C.F.R. § 7.4001(a) (listing "late fees" as within "[t]he term 'interest' as used in 12 U.S.C. § 85").
Likewise, while I agree that it is significant that Citizens Bank's discretionary decision to fund, or not, its customers' overdrafts lacks the ordinary hallmark of a lender-debtor relationship, see Maj. Op. at II.B, the bank's unilateral choice to honor or reject an NSF check does not foreclose a different relationship once a customer has failed to repay the "loan" via the intended short-term resequencing of credits and debits. Indeed, an accountholder's failure to promptly cure the overdraft inevitably puts the bank and its customer on different footing and allows for the possibility that the ongoing overdraft charges could constitute interest.
Although the classification of Citizens Bank's Sustained Overdraft Fees is a question of law, the answer -- as the OCC acknowledged in 2001 -- could depend on the facts Fawcett seeks to obtain through discovery. Given that the OCC has declined to answer that classification question, it is properly our role to determine the nature of the fees here based on all relevant facts. Simply put, we should not be deciding as a matter of law, based solely on the complaint, the "complex and fact-specific" issues concerning Citizens Bank's sustained fees. 2001 WL 731640, at *34787.
I therefore respectfully dissent from my colleagues' decision to affirm the dismissal of Fawcett's complaint.

Citizens Bank's initial "Overdraft Fee" and its "Returned Item Fee" is the same -- $35. When the charge stemming from an overdraft does not differ depending on whether the bank advances funds to the accountholder or refuses to do so, the fee is plainly for an account service (handling the overdraft) and not for the de facto "credit" given to the customer whose debit is paid despite her inadequate funds.